**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| In re: | Chapter 11 |
| SATURN CORPORATION,[1] | Case No.: |
| Debtor. | |

**DEBTOR'S MOTION FOR AN ORDER (A) AUTHORIZING THE
DEBTOR'S INTERIM AND FINAL USE OF CASH COLLATERAL
PURSUANT TO 11 U.S.C. §§ 361, 363 AND 552, (B) GRANTING
ADEQUATE PROTECTION, AND (C) SCHEDULING FINAL HEARING
PURSUANT TO 11 U.S.C. § 363(C)(2) AND FED. R. BANKR. P. 4001**

Saturn Corporation (the "Debtor"), by and through its undersigned proposed counsel, hereby moves for entry of an Order pursuant to Sections 361, 363 and 552 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") (A) authorizing the Debtor's interim and final use of cash collateral in which an interest is held by Wayne Wyvill ("Wyvill"), (B) providing adequate protection to the interests of Wyvill, and (C) scheduling a final hearing on the Debtor's Motion pursuant to Section 363(c)(2) of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this Motion, the Debtor relies on the Affidavit of Fielding W. Yost in support of First-Day Motions (the "Yost Affidavit"), and states as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.  §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]  The last four digits of the Debtor's tax identification number are 9452.

2.      The statutory bases for the relief requested herein are Sections 361, 363 and 552 of the Bankruptcy Code.  The relief is also warranted under Bankruptcy Rule 4001.

## BACKGROUND

### A.      General Background

3.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee of unsecured creditors has been appointed.

6.      No request for a trustee or examiner has been made in this Chapter 11 case.

### B.      The Debtor's Business

7.      The Debtor is a corporation formed under the laws of the State of Maryland engaged in the business database management for non-profit and membership organizations.  A more detailed description of the Debtor's business and the facts precipitating the filing of the Debtor's bankruptcy case are set forth in the Yost Affidavit.  Those facts are incorporated herein by reference.

### C.      The Lender's Loan and Collateral

8.      The Debtor is a borrower pursuant to Note dated September 29, 2000 with First International Bank in the principal amount of $1.0 million that was obtained through the U.S. Small Business Administration (the "Loan").  The Loan was subsequently assigned to UPS Capital Business Credit ("UPS").  After the Debtor defaulted on the Loan, Wyvill purchased the Loan at a discount, through a broker, from UPS.  When the Debtor failed to pay the debt service to Wyvill, he filed a confessed judgment in the Circuit Court of Maryland for Anne Arundel County, and he garnished the Debtor's former bank accounts at Bank of America.  The Debtor

currently owes principal, interest and fees of approximately $640,940.00 under the Loan, which

is believed to be secured by substantially all of the Debtor's assets wherever located, including

its bank accounts.[2]  The Debtor is not aware of any other creditor with a lien on the Debtor's

bank accounts or receivables.

> 9.      The ability of the Debtor to obtain sufficient working capital and liquidity through

the use of the cash collateral of Wyvill, which may comprise cash collateral within the meaning

of Section 363(a) of the Bankruptcy Code ( "Cash Collateral"), is vital to the preservation and

maintenance of the Debtor's going concern value.  Accordingly, the Debtor has an immediate

need to have access to Cash Collateral in order to, among other things, permit the orderly

continuation of the operation of its business, minimize the disruption of its business operations

and preserve and maximize the value of the assets of its estate in order to maximize the recovery

to all of the Debtor's creditors.  During its Chapter 11 case, the Debtor requires the use of cash to

fund day-to-day operations to maintain and preserve the value of the Debtor's assets.

**D.      Summary Pursuant to Bankruptcy Rule 4001(b)**

> 10.      Pursuant to Bankruptcy Rule 4001(b), the relief requested in this Motion, and the

relevant location within the Motion, and proposed Interim Order, are as follows:

(i)      Name of Each Entity with Interest in Cash Collateral.   Motion ¶ 8, Interim Order, ¶3.

(ii)     Use of Cash Collateral.  The Debtor proposes to use Cash Collateral for the purpose of
         operating the business and paying all necessary expenses, pursuant to the terms of
         the Interim Order and any final order entered following the Interim Period
         (defined below).  Motion, ¶9 and 15, Interim Order, ¶2 and attached Budget.

(iii)    Material Terms, Including Duration.  The Debtor's use of Cash Collateral will be limited
         to the expenses of day-to-day operations to preserve or enhance the value of the
         estate and the Bank's collateral.  The duration of the proposed Interim Order is for
         the later of twenty-one (21) days from entry of the Interim Order or the

---

[2] The Debtor's assets consist mainly of fully depreciated  office furniture and computer equipment, and receivables.
Wyvill may also have a lien on the principal's residence.

40000/0703-12847831v2

conclusion of the final hearing and entry of the Final Order approving the Motion (the "Interim Period").  Motion, ¶15, Interim Order, ¶2.

(iv)    Adequate Protection.  The Debtor proposes to provide Wyvill with adequate protection as follows:  (a) a replacement security interest in and lien on all of the existing collateral to the extent of any diminution of the Cash Collateral; (b) a superpriority claim in the amount of the adequate protection obligations to the extent provided in Section 507(b) of the Bankruptcy Code; (c) during the Interim Period, the Debtor will limit its use of cash to the budget; and (d) payments to Wyvill in the amount of $2,000.00 during the Interim Period.  Motion, ¶21, Interim Order, ¶3.

## RELIEF REQUESTED

11.    The Debtor seeks the interim use of Cash Collateral, including cash on hand, during the Interim Period, unless sooner terminated under the terms of the proposed interim cash collateral order filed with the Motion or such other Order to which the Debtor and Wyvill may agree (the "Interim Order").

## BASIS FOR RELIEF REQUESTED

12.    The standards governing a debtor's use of cash collateral are set forth in Section 363(c)(2) of the Bankruptcy Code, which provides:

> The trustee [or debtor-in-possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection, unless -
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).  The "provisions of this section" referenced in Section 363(c)(2) include Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

4

13.     The Bankruptcy Code does not explicitly define "adequate protection."  However, Section 361 of the Bankruptcy Code suggests that adequate protection may be provided by (i) periodic cash payments to the extent that there is a decrease in the lien holder's interest in the property; (ii) providing additional or replacement liens; or (iii) other relief resulting in the realization of the "indubitable equivalent" of the lien holder's interest in the property.  See 11 U.S.C. § 361.  The third possibility is regarded as a "catch-all" provision, affording courts discretion, on a case-by-case basis, to determine what level of protection is appropriate to provide a secured party "adequate protection."  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994).

14.     The goal of adequate protection is to protect a secured lender against a diminution in the value of its collateral during the period when such collateral is being used by the debtor in possession.  See In re Sherwood Square Assocs., 87 B.R. 388, 393 (Bankr. D. Md. 1988) ("[T]he purpose of adequate protection is to assure the secured creditor that it will ultimately realize the value of its collateral."); In re Hubbard Power & Light, 202 B.R. 680, 685 (Bankr. E.D.N.Y. 1996) ("The goal of adequate protection for purposes of the provision entitling a debtor to obtain financing secured by liens senior to all other interests is to safeguard the secured creditor from diminution in the value of its interests."); 495 Cent. Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization.").

15.     The Debtor respectfully submits that the proposed use of Cash Collateral over the next weeks is necessary to preserve its assets and property during the case and will avoid immediate and irreparable harm to the Debtor's estate and creditors, including Wyvill. Specifically, the Debtor requires the use of the Cash Collateral to do the work necessary to

40000/0703-12847831v2

continue its day-to-day operations, including, but not limited to, paying for use of software and equipment, utilities, postage, payroll and insurance.

16.     Moreover, the Debtor's interests are adequately protected through, among other things: (a) a lien on substantially all of the Debtor's personal property including accounts receivable, office equipment and furniture, (b) servicing of the pre-petition loan by paying $2,000.00 per month, (c) a replacement lien on the Debtor's postpetition assets, and (d) an administrative expense claim to the extent the Debtor's use of cash collateral results in a diminution of the value of the Bank's collateral.

17.     The measures of protection the Debtor anticipates are provided in the proposed Interim Order, pursuant to and in accordance with Sections 361 and 363(e) of the Bankruptcy Code, will constitute adequate protection for any diminution in the value of their collateral resulting from, among other things, the use by the Debtor of the Cash Collateral and the imposition of the automatic stay.

18.     The Interim Order provides for expenditures to fund the Debtor's necessary and essential day-to-day operations.  Courts have routinely held that adequate protection may be demonstrated by a showing that the going concern value of the debtor, or the value of the lender's collateral, is preserved by the debtor's continuing operations and use of cash collateral. See, e.g., In re JKJ Chevrolet, Inc., 117 F.3d 1413, 1413 (4th Cir. 1997) (allowing use of cash collateral to operate automobile dealership as long as continued operations maintained the value of the business);  In re Snowshoe Co., Inc., 789 F.2d 1085, 1087 (4th Cir. 1986) (allowing use of cash collateral to operate ski resorts where trustee reported that ski resort would lose 50% to 90% of its fair market value if it ceased operating).

19.     Here, the cash expenditures are necessary to preserve and maintain the value of the prepetition collateral and the interests of Wyvill.  If the Debtor is precluded from making expenditures necessary to maintain its assets and conduct ongoing operations in the ordinary course, or if the Debtor is forced to abruptly shut down its operations, Wyvill and all creditors will be harmed as the Debtor will not only lose its current customer base, but the several additional revenue streams that are scheduled to begin in May 2016.  See, e.g., In re Aqua Assocs., 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.").

20.     In addition, Section 361(2) of the Bankruptcy Code provides that adequate protection may be provided by granting a replacement lien in postpetition assets to protect the secured creditor from diminution of its collateral during the bankruptcy case.  Courts have utilized that provision of Section 361 in fashioning adequate protection and permitting a debtor to use cash collateral under similar circumstances.  See, e.g., In re LTV Steel Company, Inc., 274 B.R. 278, 286 (Bankr. N.D. Ohio 2001); In re Prichard Plaza Associates Limited Partnership, 84 B.R. 289, 302 (Bankr. D. Mass. 1988) ("If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on postpetition accounts and inventory and its proceeds and by some provision for monitoring the use of proceeds."); In re Airport Inn Associates, Ltd., 132 B.R. 951, 960 (Bankr. D. Col. 1990) ("The court could order a lien in postpetition accounts receivable as adequate protection if that relief was requested . . . ."); In re International Design & Display Group, Inc., 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all

7

postpetition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted).

21.    Wyvill is adequately protected by (i) security interests in substantially all of the Debtor's personal property, and (ii) the Debtor's service of the Wyvill loan of $2,000 per month. Should this not provide sufficient adequate protection, the proposed Interim Order provides adequate protection to Wyvill in the form of (x) replacement liens on and security interests in the Debtor's assets which Wyvill had prepetition liens on (whether existing on the Petition Date or acquired or arising thereafter), including the Debtor's bank accounts and receivables, and proceeds thereof (see 11 U.S.C. § 361(2) (providing replacement liens as a form of adequate protection)) and (y) allowed superpriority claims pursuant to Section 507(b) of the Bankruptcy Code, senior to all other administrative claims, except as set forth below.  Such adequate protection is commonplace.  See, e.g., MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-98 (10th Cir. 1987) (allowing the debtor to replace a lien on cash with a lien on property);  In re Center Wholesale, Inc., 759 F.2d 1440, 1450 (9th Cir. 1985) (observing that a lien on additional property of the debtor would likely constitute adequate protection for the secured creditor).  The replacement liens and superpriority claims are granted solely to the extent of any net diminution of the value of the Bank's interests in the Cash Collateral resulting from the (i) Debtor's use of the Cash Collateral or (ii) the imposition of the automatic stay.  The adequate protection liens and superpriority claims shall also be junior and subject to all valid, enforceable, perfected and unavoidable liens on the prepetition collateral in existence as of the Petition Date or duly perfected after the Petition Date under Section 546(b) of the Bankruptcy Code.

40000/0703-12847831v2

## REQUEST FOR INTERIM RELIEF

22.     Bankruptcy Rule 400l(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

23.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtor to use Cash Collateral on an interim basis in accordance with the Interim Order, pending entry of a final order.

24.     The Debtor has an urgent and immediate need for cash to continue to operate. Absent being permitted to use the Cash Collateral, the Debtor will not have sufficient funds with which to operate its business on an ongoing basis.  Absent authorization from the Court to use the Cash Collateral, as requested, on an interim basis pending a final hearing on the motion, the Debtor will be immediately and irreparable harmed.  Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtor's business, to the detriment of all parties in interest.  Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor and facilitating its reorganization efforts.

25.     The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

26.     To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen day stay under Bankruptcy Rule 6004(h).

9

40000/0703-12847831v2

## NOTICE

27.    Notice of this motion has been provided to:  (i) the Office of the United States Trustee; (ii) the secured creditors; (iii) the twenty largest unsecured creditors; and (iv) all parties entitled to receive notices in this Chapter 11 case pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtor submits that no further notice is required.

## WAIVER OF MEMORANDUM OF LAW

28.    Pursuant to Local Rule 9013-2 of the Local Rules, the Debtor states that, in lieu of submitting a memorandum in support of this Motion, it will rely solely upon the grounds and authorities set forth herein.

WHEREFORE, the Debtor respectfully requests the Court to (A) enter the Interim Order granting the relief requested herein, including (i) authorizing the Debtor's use of cash including Cash Collateral, pursuant to the terms of the Interim Order, (ii) finding that the interests of Wyvill are adequately protected, and (iii) granting related relief, and (B) schedule an interim hearing and a final hearing; and (C) grant to the Debtor such other and further relief as the Court deems just and proper.

Dated:  February 28, 2016

**COLE SCHOTZ P.C.**

By:  */s/ Gary H. Leibowitz*
Gary H. Leibowitz (Bar No. 24717)
Jonathan A. Grasso (Bar No. 19278)
300 East Lombard Street, Suite 1450
Baltimore, MD  21202
(410) 230-0660
(410) 230-0667 (fax)
gleibowitz@coleschotz.com
jgrasso@coleschotz.com

*Proposed Counsel for Debtor
and Debtor-in-Possession*

10

40000/0703-12847831v2